MARTIN, Circuit Judge,
concurring in the judgment:
Where a sentencing court addresses the factors set out in 18 U.S.C. § 3553(a) and imposes a sentence within the statutory maximum, this court’s precedent teaches deference to that judgment on any variance above the Guideline range, no matter how large. See, e.g., United States v. Shaw, 560 F.3d 1230, 1241 (11th Cir.2009) (upholding a 120-month sentence representing a 224 percent upward variance from the maximum Guideline sentence); United States v. Amedeo, 487 F.3d 823, 834 (11th Cir.2007) (upholding a 120-month sentence representing a 161 percent upward variance); United States v. Turner, 474 F.3d 1265, 1281 (11th Cir.2007) (upholding a 240-month sentence representing a 281 percent upward variance). Indeed, in all the cases decided by this court since United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), I have found none in which we vacated an upward variance from the Sentencing Guidelines on reasonableness grounds. For this reason, even though Mr. Early’s sentence of 210-months imprisonment represents a 116 percent variance above the 97-month sentence set by the top of his Guideline range and a remarkable 169 percent increase from the 78-month sentence requested by the government itself, I cannot say the panel’s decision here is contrary to our precedent.
At the same time, I write separately to note that this Court has declined to exercise similar deference toward a sentencing court’s decision to grant a downward variance. See, e.g., United States v. Jayyousi, 657 F.3d 1085, 1118-19 (11th Cir.2011) (holding that a 42 percent downward variance was substantively unreasonable); United States v. Irey, 612 F.3d 1160, 1196 (11th Cir.2010) (en banc) (same); United States v. Pugh, 515 F.3d 1179, 1203 (11th Cir.2008) (holding that a 100 percent downward variance was substantively unreasonable). This, even where the extent of the variance from the Guideline range was far smaller and where the reasons given by the sentencing court were more substantial.
My reading of these cases tells me that in considering sentences above the Guide *1224 line range, we look only to whether the sentencing court seemed to consider the § 3553(a) factors and we ignore whether the court might have disregarded one of the factors or weighed the factors in an unreasonable way. In contrast, for downward variances, we show no such deference and instead scrutinize how a sentencing court applied each and every § 3553(a) factor. We even go so far as to decide for ourselves whether the factors were weighed correctly. See Irey, 612 F.3d at 1196-1225; Pugh, 515 F.3d at 1194-1203.
Sadly for him, Mr. Early’s case is a good one to highlight this dichotomy. In downward variance cases such as Irey and Pugh, we vacated sentences on the ground that they failed in effect to give “real weight” to the Guidelines or to adequately reflect the Guidelines’ policy statements and underlying concerns. See Irey, 612 F.3d at 1218-19; Pugh, 515 F.3d at 1199-1201. Yet, in the case of Mr. Early’s 116 percent upward variance, our opinion does not mention the fact that the sentencing court essentially cast aside the Guidelines on the basis of policy disagreements.[1] That the sentence imposed reflects no consideration of “pertinent policy statement[s]” of the Sentencing Commission, contrary to 18 U.S.C. § 3553(a)(5), is nowhere acknowledged.
Neither does this opinion comment on the sentencing court’s own views on deterrence and public protection,[2] which led it *1225 to add almost a decade to Mr. Early’s maximum Guideline sentence, almost tripling the sentence that the government had asked for. Instead of leaving prison in his early 60s, Mr. Early is now scheduled to leave prison in his early 70s. But I see nothing in this record to suggest why Mr. Early would be substantially more likely to threaten the public than another convicted felon released from prison in his early 60s.[3] In sum, even though our case law purportedly requires “a significant justification” to support a “major departure” from the Guidelines, see Pugh, 515 F.3d at 1201, the panel’s review of Mr. Early’s 116 percent upward variance evinces little indication that such a requirement even applies here.
Absent correction, I fear this Court’s different approach for reviewing up and down sentence variances may erode public trust in our work.

. After pointing out that the Guideline range only increased from 57-71 months for one bank robbery to 78-97 months for three robberies, the sentencing court opined, "the guidelines, just in the way that they’re created, don’t really capture the repeated criminal conduct in the way that — that I think they ought to.” Yet, the Guidelines expressly aim to avoid a system in which each additional count proportionately increases the proper punishment. See U.S.S.G. ch. 1, pt. A, introductory cmt. § 4(e), p.s. (2010). The goal instead is to "produce declining marginal punishment,” id. § 3D 1.4 cmt. background, by taking the most serious offense "as a starting point,” and then "provid[ing] incremental punishment for additional criminal conduct,” id. ch. 3, pt. D, introductory cmt. This results in a system in which "[t]he amount of the additional punishment declines as the number of additional offenses increases.” Id. (noting that this approach is intended to apply to "independent instances of assault or robbery”). Disagreeing with this policy, the sentencing court simply set the Guidelines aside.
The other explanation given by the court for why the Guidelines failed to reflect the seriousness of Mr. Early’s conduct "accurately” was because the four-level enhancement for use of a "dangerous weapon” during a robbery "understate[d]” the tremendous fear that Mr. Early had caused. But it is clear from the Guidelines' carefully calibrated "hierarchy of culpability for varying degrees of involvement,” United States v. Miller, 206 F.3d 1051, 1053 (11th Cir.2000), that the Guidelines intend to distinguish fake bombs from real bombs, reserving harsher punishment for the latter. Compare U.S.S.G. § 2B3.1(b)(2)(D) (four-level enhancement for using a fake bomb) with id. § 2B3.1(b)(2)(A)-(C) (enhancement of five to seven levels for using a real bomb). Thus, this was not a case where the Guidelines failed to take into account the special characteristics of Mr. Early's crime. Instead, the sentencing court simply did not agree with the Guidelines’ calibrated distinction between real and fake bombs.

. In refusing a Guideline sentence, the court emphasized that Mr. Early had convictions which were "too old” to figure into his Guideline calculation. But this is not a reason to disregard the Guidelines, which speak directly to this issue. If an upward departure is warranted because the defendant’s criminal history is not adequately captured, the Guidelines advise to apply the criminal history category that "most closely resembles” the defendant’s. U.S.S.G. § 4A1.3(a)(4)(A). Where an upward departure from the highest criminal history category is warranted, “the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case.” Id. *1225 § 4A 1.3 (a)(4)(B). By giving Mr. Early a sentence that was five years longer than even the highest Guideline sentence for which Mr. Early would have been eligible had he been assigned the maximum criminal history category (VI), the court appears to have rejected this framework.

. Mr. Early is neither a sophisticated terrorist nor a sex offender. He therefore does not fall into the category of criminals for whom we have rejected the assumption that "recidivism ordinarily decreases with age.” Jayyousi, 657 F.3d at 1117; see Irey, 612 F.3d at 1213-16. That is not to say that an upward variance was unreasonable given Mr. Early’s criminal history. What I question was the reasonableness of adding nearly a decade of prison time to Mr. Early’s sentence even though under the maximum Guidelines sentence he would not have left prison until his early 60s. We, as a Circuit, should not ignore § 3553(a)’s clear prohibition against imposing a sentence "greater than necessary! ] to comply with the purposes set forth” in § 3553(a)(2). 18 U.S.C. § 3553(a).